# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

MARY ELIZABETH B. GLASGOW,

                                   Plaintiff,

              -v.-                                5:18-CV-721
                                                    (GTS/ATB)

CNYRTA/Centro, Inc., et al.,

                                    Defendants.

MARY ELIZABETH B. GLASGOW, Plaintiff pro se

ANDREW T. BAXTER, United States Magistrate Judge

## ORDER and REPORT-RECOMMENDATION

The Clerk has sent to the court for review a complaint, together with an application to proceed in forma pauperis ("IFP"), filed by pro se plaintiff Mary Elizabeth B. Glasgow. (Dkt. Nos. 1, 2).

## I. __IFP Application__

Plaintiff declares in her IFP application that she is unable to pay the filing fee. (Dkt. No. 2). This court agrees, and finds that plaintiff is financially eligible for IFP status.

However, in addition to determining whether plaintiff meets the financial criteria to proceed IFP, the court must also consider the sufficiency of the allegations set forth in the complaint in light of 28 U.S.C. § 1915, which provides that the court shall dismiss the case at any time if the court determines that the action is (i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915 (e)(2)(B)(i)-(iii).

In determining whether an action is frivolous, the court must consider whether

the complaint lacks an arguable basis in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Dismissal of frivolous actions is appropriate to prevent abuses of court process as well as to discourage the waste of judicial resources. *Neitzke*, 490 U.S. at 327; *Harkins v. Eldridge*, 505 F.2d 802, 804 (8th Cir. 1974). Although the court has a duty to show liberality toward *pro se* litigants, and must use extreme caution in ordering *sua sponte* dismissal of a *pro se* complaint before the adverse party has been served and has had an opportunity to respond, the court still has a responsibility to determine that a claim is not frivolous before permitting a plaintiff to proceed. *Fitzgerald v. First East Seventh St. Tenants Corp.*, 221 F.3d 362, 363 (2d Cir. 2000) (finding that a district court may dismiss a frivolous complaint *sua sponte* even when plaintiff has paid the filing fee).

To survive dismissal for failure to state a claim, the complaint must contain sufficient factual matter, accepted as true, to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Bell Atl. Corp.*, 550 U.S. at 555). The court will now turn to a consideration of the plaintiffs' complaint under the above standards, keeping in mind that pro se pleadings are interpreted to raise the strongest arguments they suggest. *See Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007).

## II.    Facts

Plaintiff has filed four separate form-complaints in this action, essentially claiming that the Central New York Regional Transportation Authority/CENTRO, Inc. ("CENTRO") improperly terminated plaintiff and caused her substantial damages.

(Complaints ("Compl.") (Dkt. No. 1).

### A.    Title VII

Plaintiff's first complaint is under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. (Dkt. No. 1 at 1-5).[1]  In the section of plaintiff's complaint entitled "Parties," plaintiff has named CENTRO, together with "Outside Supervisors/Union Reps-Officials." (Title VII Compl. ¶ 2(b) & 2(c) (Dkt. No. 1 at 1-2).  For "Official Position," plaintiff has written - "Driver Supervisors, and Driver Reps." (Title VII Compl. ¶ 3(a) & 3(b) - CM/ECF p.2).

Plaintiff then states that the defendant discriminated against plaintiff because of her race, religion, sex, national origin, and, next to a box entitled "other," she has also hand-written that she was discriminated against based on her educational and social status. (Title VII Compl. ¶ 6(A)-(D) & 6(F) - CM/ECF p.2).  Plaintiff has also checked boxes indicating that the defendants' conduct involved termination of employment, failure to promote, unequal terms and conditions of employment, retaliation, and she has hand-written "mischaracterizations leading to penalty or punishments." (Title VII Compl. ¶ 7(B)-7(D) & 7(F)-7(G) - CM/ECF p.2).

In the "Fact" section of the complaint, plaintiff states that Chuck O'Brien, William Harris, the dispatch "desk," Operations Department, Natasha Randall, Chuck Ascevedo, Union Reps., many rank and file co-workers, and Linda Montroy[2]

---

[1] The court will cite to the pages assigned by the court's electronic filing system, CM/ECF.

[2] Although these individuals are not listed in the caption or in the "Defendants" section of the complaint, the court notes that plaintiff provided summonses for all but one of these individuals in addition to a summons for CENTRO, plaintiff's employer.  In an abundance of caution, the Clerk listed as defendants all of the individuals for whom the plaintiff provided a summons in addition to the individual that is named in the body of the complaint, but for whom no summons was provided, and the court will address the defendants accordingly.

mischaracterized, fabricated, attempted to provoke, bent or slanted "the policy," made false accusations, and tried to eliminate plaintiff "from the roster." (Title VII Compl. ¶ 8) (Dkt. No. 1 at CM/ECF pp.3-4).  Plaintiff claims that all the defendants "participated in her wrongful termination," and that her "paperwork" contains vague dates, times and names to "conceal them." (*Id.*)  Plaintiff's first Cause of Action is listed as "Breach of Contract & Breach of Trust."  The rest of the Causes of Action appear to be continuations of the facts of her case.  Plaintiff claims that an "insurance error" was attributed to her, and she was forced to repay a benefit that she never received or applied for.  Plaintiff states that she was "forced out" in a wrongful termination which has caused loss of stability, retirement funds, and dwelling.

Finally, plaintiff states that the "Union" withheld paperwork and vital information and intruded into her private affairs, filed a "phoney grievance" on her behalf without consulting her and falsely established a "step-by-step process" that never occurred, "bolstering the company." (Title VII Compl. ¶ 9 - CM/ECF pp.3-4).  Plaintiff claims that the Equal Employment Opportunity Commission ("EEOC") issued her a Right-to-Sue letter on March 21, 2018.[3] (Title VII Compl. ¶ 10 - CM/ECF p.4). Plaintiff seeks monetary relief and a "final judgment" for severe bullying, subjugation, and a year of homelessness. (Title VII Compl. ¶ 15 - CM/ECF p. 5).

## B.    Age Discrimination

Plaintiff's second complaint is written on a form used for Age Discrimination in Employment Act cases. Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 626 (c)(1) (Dkt. No. 1 at CM/ECF pp.6-9).  In this complaint, plaintiff names

---

[3] Although the form instructs the plaintiff to attach the Right-to-Sue letter, there is no such letter attached to these documents.

CENTRO, Chuck O'Brien, and William Harris as defendants in the "Parties" section of the complaint. (ADEA Compl. ¶¶ 2(b),[4] 3(a) & 3(b) - CM/ECF pp,6-7).  Plaintiff claims that the conduct which she alleges violates the ADEA includes termination of employment, failure to promote, unequal terms and conditions of employment, and retaliation. (ADEA Compl. ¶ 6(B)-(D), 6(F) - (CM/ECF p.7)).

Plaintiff has also handwritten "other acts," involving constant supervisor reports, mischaracterizations, lies, false charges, and verbal abuse. (*Id.*)  Plaintiff also claims that 99% of all supervisor reports which charged her with lapse or lack of understanding, capacity, swiftness, inability to articulate, inability to follow instructions, willfully denying or evading standard policies were all lies and false reports.  Plaintiff was subjected to "surveillance beyond policy."  According to plaintiff this conduct was all initiated by defendants O'Brien and/or Harris to "wrongfully terminate" her. (ADEA Compl. ¶ 7) - CM/ECF p. 8).  Plaintiff states that the EEOC issued its Right-to-Sue letter on March 21, 2018. (ADEA Compl. ¶ 7 - CM/ECF p.9)  Plaintiff requests a "clear rejection" of the "subjugation tactics" of the "CENTRO 'underbosses,'" as well as compensatory and punitive damages. (ADEA Compl. ¶ 18 - CM/ECF p. 9).

### C.    Section 1983

Plaintiff's third complaint purports to be brought under 42 U.S.C. § 1983. ("1983 Comp." - CM/ECF pp.10-13).  In the section 1983 complaint, plaintiff alleges that CENTRO uses "'benign neglect'" strategy in "overall layers of malfeasance, misfeasance & non-feasance." (1983 Compl. ¶ 4 - CM/ECF p.11).  Plaintiff claims that

---

[4] In the ADEA complaint, plaintiff has actually listed CENTRO as a plaintiff, but clearly that is in error.

Centro misused "federal 19-A driver policies"[5] to force plaintiff to take unwarranted mental evaluations, drug testing, and counseling. Centro purposefully "mischaracterized" accusations of unsafe driving. In her causes of action, plaintiff continues reciting facts, without stating any causes of action. (1983 Compl. ¶ 5 - CM/ECF p.12). Plaintiff states that Steve Koegel refused to consider plaintiff for an open position in the Marketing Department, and when plaintiff attempted to obtain a "flow chart" for "organizational redress of his offensive and oppressive actions," it caused an "eight year long persecution." Plaintiff claims that Mr. Koegel attempted to involve plaintiff in a company marketing campaign without asking plaintiff's approval. Plaintiff rejected the attempt and spoke openly about it. This allegedly caused an upper management push to "persecute" her. (*Id.*)

In plaintiff's third Cause of Action, she claims that she insisted, "against opposition," on speaking to a "chief officer" to let the "top managers" know what was happening. Instead, plaintiff spoke to defendant Christine LoCurto and told her that plaintiff was being "set up." Ms. LoCurto allegedly promised that she would respond, but never looked into plaintiff's "issues." (*Id.*) Plaintiff states that she is seeking relief for her "senior years," compensatory and punitive damages from Centro for wrongful termination.

### D.    *Bivens*

Plaintiff's final complaint is written on a form used for actions brought under

---

[5] Plaintiff appears to be referring to Article 19-A of the New York State Vehicle and Traffic Law. *See* N.Y. Veh. & Traf. § 509-a et seq. This Article contains special requirements for bus drivers based on legislation that was passed after a tragic a school bus accident that occurred on March 24, 1972. https://dmv.ny.gov/motor-carriers/ information-and-forms-article-19. This section creates qualifications for bus drivers and for motor carriers who employ bus drivers. *Id.*

*Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388

(1971) ("*Bivens* Compl." - CM/ECF pp.14-17.  In the "Defendants" section of the

complaint, plaintiff lists CENTRO, the CENTRO Executive Officers & Administrators

(1st and 2nd Level), Christine LoCurto in the CENTRO Human Resources Department,

and Linda Montroy in the Accounting Department. (*Bivens* Compl. ¶ 3(a), 3(b) & 3(c) -

CM/ECF pp.14-15).  In the "Fact" section of this complaint, plaintiff states that

CENTRO does not properly oversee grievances, has a "locked door" policy, and has

"hidden or cloaked titles, duties, and offices." (*Bivens* Compl. ¶ 4 - CM/ECF p.15).

Plaintiff states that Chris Morreski & KC Morton[6] blocked plaintiff from addressing

personal concerns with department heads and blocked her issues from "reaching the

executive body." (*Id.*)

     In her "Causes of Action," plaintiff continues to assert facts.  Plaintiff alleges that

no executive "staffer" heard of her grievances, and there was no relief from bullying,

retaliation, or wrongful termination. (*Bivens* Compl. ¶ 5) (CM/ECF p.16).  Plaintiff

claims that defendant LoCurto met plaintiff "under hostile circumstances from the 2nd

level management."  Plaintiff states that defendant LoCurto promised to follow-up, but

instead plaintiff was set up and shamed, then terminated.  Plaintiff repeats her claim of

wrongful termination, unwarranted mental evaluation, drug testing, and counseling.

(*Id.*)  Plaintiff states that she is seeking relief for lack of oversight, breach of

trust/contract, locked door, failure to investigate, and wrongful termination. (*Bivens*

Compl. ¶ 6) (CM/ECF p.17).

---

[6] Neither of these individuals are specifically listed as defendants and no subpoenas have been provided for them.  Because plaintiff does not state a claim against these individuals, the court will not discuss plaintiff's failure to list them as defendants.

III.    **Bases for Plaintiff's Allegations**

Federal question jurisdiction pursuant to 28 U.S.C. § 1331 provides a basis for jurisdiction when the plaintiff brings a civil action that arises "under the Constitution, laws, or treaties of the United States." 28 U.S. C. § 1331.  In this case, plaintiff has brought "federal question" claims, and the court will discuss whether plaintiff states a claim under any of the statues that she cites or under *Bivens*.  Although it appears that plaintiff is trying to make one claim of wrongful termination, she has chosen to file separate complaints, and the court will separate the claims based upon the statutory or case law basis for each "complaint" to see if plaintiff could be stating any claims based on her facts.  The court will keep in mind that plaintiff may be attempting to make one claim of improper termination, so even though I have included separate analyses, I have considered all the facts in order to determine whether plaintiff may state a claim under any of the bases that she submits.

A.    **Title VII**

1.    **Legal Standards**

Under Title VII, it is unlawful for an employer to discriminate against any individual with respect to her compensation, terms conditions, or privileges of employment, because of the individual's race, color, religion, sex or national origin. 42 U.S.C. § 2000e-2(a)(1).  In order to state a claim under Title VII, plaintiff must show that she was a member of a protected class, she was qualified for the position, she suffered an adverse employment action, and the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent. *Roge v. NYP Holdings, Inc.*, 257 F.3d 164, 168 (2d Cir. 2001).  In addition, individuals are not subject to liability under Title VII; thus, to the extent that plaintiff raises Title VII

8

claims (including any retaliation claims), they may not be brought against the individual defendants. *Sassaman v. Gamache*, 566 F.3d 307, 315-16 (2d Cir. 2009) (quoting *Patterson v. County of Oneida*, 375 F.3d 206, 221 (2d Cir. 2004)).  Thus, CENTRO would be the only proper defendant in a Title VII case.

### 2.    Application

Although plaintiff has checked boxes claiming discrimination based on race, religion, sex, and national origin, there are no facts stated in her Title VII complaint - or any of the other complaints - that would associate any of these protected categories with her termination or her failure to promote.  In a category, marked "other," plaintiff states that she was discriminated against based on her educational and social status.  Neither plaintiff's educational status, nor her social status are protected under Title VII. *See* 42 U.S.C. § 2000e-2(a)(1).

Although the court knows that plaintiff is a woman, and sex is a protected class, she has not indicated how CENTRO's actions in mistreating her or terminating her were based on her sex.  The individuals who allegedly "mischaracterized" things or made "false accusations" against her were both men and women, and plaintiff states that her first cause of action is for breach of contract and breach of trust.  Plaintiff also simply lists a variety of individuals in the Fact section, but never states how these individuals participated in violating her rights.  Plaintiff has not identified most of the positions held by the individual defendants who she names.  She states that her wages were manipulated to "benefit CENTRO," and an "illegal lien" was placed on her wages. While plaintiff may claim that CENTRO improperly terminated her, she does not connect her allegedly wrongful termination to her sex.

In addition plaintiff never states anywhere in the complaints her religion, her

race, her national origin, or how she believes that the defendants' alleged actions related to any one of the protected classes that she has checked on the form-complaint. Plaintiff makes nothing but conclusory allegations that her rights have been violated which are insufficient to state a claim. *See Lucas v. Apple Food Service of New York, LLC*, No. 15-CV-4007, 2015 WL 6507429, at *3 (E.D.N.Y. Oct. 27, 2015) (conclusory allegations that defendant suspended plaintiff or terminated her employment based on a protected characteristic were insufficient to state a plausible claim of employment discrimination) (citing *Wilson v. New York City Dep't of Corr.*, No. 11 Civ. 9157, 2013 WL 922824, at * 4 (S.D.N.Y. Mar. 8, 2013)). Thus, plaintiff has failed to state a claim under Title VII for discrimination based on race, religion, or national origin. Finally, plaintiff states that she was discriminated against based upon her educational and social status. Even if such categories were protected, which they are not, plaintiff has failed to state how her education or her social status factored into her termination.

In addition, plaintiff may not sue individual defendants in a Title VII action. *Querra v. Jones*, 421 Fed. App'x 15, 17 (2d Cir. 2011) (affirming dismissal of Title VII and ADEA claims against individual defendants because "neither statute subjects individuals, even those with supervisory authority over the plaintiff, to personal liability"). It does not appear that plaintiff has specifically named her "Union Reps."

Even if the court could determine to whom plaintiff is referring, plaintiff may not include her Union Representatives as defendants. First, plaintiff is not employed by the Union, and plaintiff has not alleged that the Union discriminated against her, causing the adverse employment actions alleged. There are certain circumstances in which a Union, not its individual representatives, may be liable for Title VII discrimination. *See* 42 U.S.C. § 2000e-2(c)(1)-(c)(3). These circumstances involve discrimination in union

membership, refusal to refer an individual for employment, deprive or tend to deprive any individual of employment opportunities, or limit such employment opportunities or otherwise adversely affect her status as an employee or as an applicant for employment, or cause or attempt to cause an employer to discriminate against an individual in violation of this section because of such individual's race, color, religion, sex, or national origin. *Id.*

Although plaintiff claims that the Union filed a "phoney" grievance on her behalf without asking her about it and "bolstered" her employer, there is no allegation that any of the Union's actions were taken "because of" plaintiff's sex, race, or national origin. Plaintiff's case may be dismissed in its entirety insofar as it attempts to raise a Title VII claim.[7]

## B.    Age Discrimination

### 1.    Legal Standards

Under the ADEA, the plaintiff must show that she belonged to a protected class, she was qualified for the position that she held or that she sought, she suffered an adverse employment action, and the adverse employment action occurred under

---

[7]The court would also point out that, although plaintiff states that the Equal Opportunity Employment Commission ("EEOC") issued a Right-to-Sue letter on March 21, 2018, and that such letter is "attached," plaintiff has failed to attach the letter to her complaint. Generally, the Right-to-Sue letter must accompany a complaint filed in federal court. *See Brunson-Bedi v. New York*, No. 15-Civ. 9790, 2018 WL 2084171, at *4 (S.D.N.Y. May 1, 2018) (discussing the exhaustion requirement in a Title VII action and Right-to-Sue letter). Although, there are circumstances in which waiver is possible, generally, a plaintiff cannot file suit for alleged violations of Title VII until the plaintiff files timely charges with the EEOC and obtains a Right-to-Sue letter. *Id.* (citing inter alia 42 U.S.C. § 2000e-5(f)(3); *Williams v. N.Y. Housing Auth.*, 458 F.3d 67, 69-70 (2d Cir. 2006)). Receipt of the Right-to-Sue letter establishes the deadline for filing the Title VII and ADEA actions. *Ayala v. United States Post Office*, No. 17-1218, __ F. App'x __, 2018 WL 1414536, at *1 (2d Cir. Mar. 22, 2018). If plaintiff is allowed to amend her complaint to state a claim under Title VII, she must attach her right to sue letter to any amended pleading.

circumstances giving rise to the inference of discriminatory intent. *Cargian v. Breitling USA, Inc*., No. 15 Civ. 1084, 2016 WL 5867445, at *3 (S.D.N.Y. Sept. 29, 2016) (quoting *Brown v. City of Syracuse*, 673 F.3d 141, 150 (2d Cir. 2012), *appeal filed*, (2d Cir. Oct. 24, 2016).  Plaintiff has the burden to show that age was the "but for" cause of the challenged employer decision. *Testa v. CareFusion*, No. 14-CV-5202, 2018 WL 1611378, at *5 (E.D.N.Y. Apr. 3, 2018) (citing inter alia *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 178 (2009) (holding that under the ADEA a plaintiff cannot establish disparate treatment by proving that age was simply a motivating factor in the adverse decision)).

## 2.     Application

Plaintiff has completed the form-complaint, stating that she was "54-61" at the time of the "alleged discriminatory acts."[8] (Compl. at CM/ECF p.8).  Thus, she has met the first requirement to state a claim under the ADEA.  Plaintiff has also alleged that she was terminated.  Termination is an adverse employment action. 29 U.S.C.  § 623 (a)(1) (unlawful for an employer to "discharge or otherwise discriminate" based on age).

The statement of facts in the complaint provides no support for plaintiff's claim that the allegedly wrongful actions by defendants were in any way related to plaintiff's age.  Plaintiff states that 99% of her supervisor's reports charged her with a lapse or lack of understanding, capacity, swiftness, inability to articulate, inability to follow instructions, and "willfully denying or evading standard policies." (ADEA Compl. ¶ 7 -

---

[8] The ADEA protects individuals over the age of 40. *See Roge v. NYP Holdings, Inc*., 257 F.3d 164, 168 (2d Cir. 2001) ("Under the ADEA, individuals ages forty and over are members of the protected class.") (citing 29 U.S.C. § 631(a)).

CM/ECF p.8).  Plaintiff seems to also allege that she was subjected to surveillance "beyond policy," initiated by defendants O'Brian and Harris to "wrongfully terminate" plaintiff.  Once again, plaintiff's allegations are vague, and although she has checked a box on the complaint form, indicating that she was subjected to "unequal terms and conditions of employment" and "retaliation," plaintiff does not state how her terms of employment were different that someone who was not in the protected category, and plaintiff does not indicate how any defendant retaliated against her for opposing a practice made unlawful by the statute. *See* 29 U.S.C. § 623(d) (prohibiting retaliation by an employer or a labor union).

In addition, an ADEA action may only proceed against CENTRO because as in Title VII, plaintiff may only sue her employer, not individual defendants. *Querra v. Jones*, 421 Fed. App'x at 17.  Thus, to the extent that plaintiff wishes to bring an action for age discrimination, the only proper defendant would be CENTRO.  As the complaint is written, it is vague and conclusory and must be dismissed.  As discussed below, the court will recommend that plaintiff's employment discrimination under Title VII and the ADEA be dismissed without prejudice as to CENTRO alone.  However, the case must be dismissed with prejudice as against individual defendants O'Brien, Harris, "Bob" at the Dispatcher Desk, Ascevedo, Montroy, Koegel, and LoCurto because plaintiff may not sue individuals under Title VII or the ADEA.

## C.    Section 1983

### 1.    Legal Standards

Section 1983 provides, in relevant part, that

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to

the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . .

42 U.S.C. § 1983. Section 1983 itself does not create substantive rights, rather, it provides a "'method for vindicating federal rights elsewhere conferred.'" *Fiedler v. Incandela*, 222 F. Supp. 3d 141, 156 (E.D.N.Y. 2016) (quoting *Patterson v. County of Oneida*, 375 F.3d 206, 225 (2d Cir. 2004) (citing *Baker v. McCollan*, 443 U.S. 137, 144 n. 3 (1979)). In order to state a claim under section 1983, the plaintiff must allege the deprivation of rights, privileges, or immunities secured by the Constitution or other laws, committed by a person acting under color of state law. *Id.* (quoting *Hawkins v. Nassau Cty. Corr. Facility*, 781 F. Supp. 2d 107, 111 (E.D.N.Y. 2011).

To the extent that plaintiff seeks to bring an Equal Protection claim based on the allegations in her other complaints, the court notes that, section 1983 may be available as a basis for such a claim.[9] *See Garrido v. N.Y.C. Dep't of Educ.*, No. 16 Civ. 9464, 2018 WL 1664793, at *5 (S.D.N.Y. Mar. 15, 2018) (discussing sections 1981 and 1983

---

[9] It is clear that such a claim is available for Title VII. However, some circuits hold that the AEDA is the exclusive remedy for age discrimination. *See Rodrock v. Moury*, 379 Fed. App'x 164 (3d Cir. 2010); *Ahlmeyer v. Nevada Syst. of Higher Educ.*, 555 F.3d 1051 (9th Cir 2009); *Zombro v. Baltimore City Pol. Dep't*, 868 F.2d 1364 (4th Cir. 1989); *Migneault v. Peck*, 158 F.3d 131 (10th Cir. 1998); *Lafleur v. Texas Dep't of Health*, 126 F.3d 758 (5th Cir. 1997). Other Circuits allow such claims. *See Levin v. Madigan*, 692 F.3d 607 (7th Cir. 2012). The Second Circuit has not made a final ruling on the matter, but has considered both the ADEA and 1983 together without discussing whether one precludes the other. *Picone v. Town of Webster*, 511 F. App'x 63 (2d Cir. 2013). Some districts considered both claims without discussing whether the ADEA preempts section 1983 with respect to Equal Protection claims based on age. *See e.g. Lineli v. New York City Bd. of Educ.*, No. 15-CV-5085, 2018 WL 1611370, at *5 (E.D.N.Y. Mar. 30, 2018); *Lebada v. New York City Dep't of Educ.*, No. 14 Civ. 758, 2016 WL 626059, at 13 n.10 (S.D.N.Y. Feb. 8, 2016) (discussing the "open question" in the Second Circuit regarding preemption, but not reaching the issue because the section 1983 claims were dismissed on the merits), (*Rep't Rec.*), *adopted*, 2016 WL 8453417 (S.D.N.Y. May 16, 2016). Because the question still appears to be open in the Second Circuit, the court will assume that plaintiff could bring both an ADEA claim and an Equal Protection section 1983 claim based on age.

in the employment discrimination context for public employees).  However, a public employee may not bring a "class-of-one"[10] Equal Protection claim for employment discrimination "with no assertion that the different treatment was based upon the employee's membership in a protected class." *Engquist v. Oregon Dep't of Agriculture*, 553 U.S. 591, 595 (2008).  In addition, under section 1983, individual defendants may be held liable for any violations as long as plaintiff can establish their personal involvement in the violation. *See Cater v. New York*, No. 17 Civ. 9032, 2018 WL 3093964, at *4 (S.D.N.Y. June 21, 2018) (citing *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013)).

### 2. Application

Plaintiff has also filed a form-complaint on a form that is used for claims brought under 42 U.S.C. § 1983. (Compl. at CM/ECF pp.10-13).  In this complaint, plaintiff lists various "departments" of CENTRO in the "Defendants" section of the form-complaint. (Compl. at § 3(a)-(c); CM/ECF p.10-11).  These departments include Human Resources, Accounting Department, Operations Department, and Management Operations. *Id.*  Plaintiff has also included the "Dispatch Desk," "Outside Supervisors," and "Security Officer." *Id.*  In the body of the complaint, plaintiff mentions defendants Koegel and LoCurto. (Compl. at § 5, CM/ECF p.12).

Plaintiff first states that CENTRO[11] used "'benign neglect' strategy in overall

---

[10] In a traditional "class-of-one" claim, a plaintiff may allege that she has been intentionally treated differently from others who are "similarly situated," and there is no "rational basis" for the difference in treatment. *See Analytical Diagnostic Labs, Inc. v. Kusel*, 626 F.3d 135, 140 (2d Cir. 2010) (citations omitted).

[11] For purposes of this recommendation, this court will assume that CENTRO, as a County organization acts under color of state law.  CENTRO's website states that the "current membership of the [Central New York Regional Transit Authority] consists of the counties of Onondaga, Oneida,

layers of malfeasance, misfeasance, and nonfeasance." (*Id.* § 4, CM/ECF p.11).

Plaintiff claims that CENTRO misused driver "policies" to force plaintiff to take

unwarranted tests, distorted and mischaracterized claims of unsafe driving, and caused

plaintiff's one-year "homelessness." (*Id.*)  Plaintiff has not stated a constitutional right

that she believes was violated by CENTRO's actions.  Plaintiff makes only a vague

statement that CENTRO committed some sort of misconduct, causing her termination.

Section 1983 requires specific claims.  "[T]he Court is not required to accord '[l]egal

conclusions, deductions, or opinions couched as factual allegations . . . a presumption

of truthfulness.'" *Pennington v. City of Rochester*, No. 13-CV-6304, 2018 WL

3023383, at *2 (W.D.N.Y. June 18, 2018) (quoting *In re NYSE Specialists Sec. Litig.*,

503 F.3d 89, 95 (2d Cir. 2007)) (alterations in original and added). *See also Barr v.

Abrams*, 810 F.2d 358, 363 (2d Cir. 1987) ("As we have repeatedly held, complaints

relying on the civil rights statutes are insufficient unless they contain some specific

allegations of fact indicating a deprivation of rights, instead of a litany of general

conclusions that shock but have no meaning.").

    In addition, assuming that CENTRO acts under color of state law, it would be

considered a "municipality" because CENTRO is made of various municipal members.

When a plaintiff bases her claims on municipal liability, plaintiff must allege a direct

causal link between a municipal "policy or custom" and the alleged violation. *Bender v.*

---

Cayuga, and Oswego." http://www.centro.org/aboutus.aspx.  In *Thrall v. CNY CENTRO, Inc.*, Senior
Judge Neal P. McCurn assumed without analysis that CENTRO acted under color of state law when he
determined that a Union did not act under color of state law because there was insufficient evidence of
conspiracy with CENTRO. *Thrall v. CNY CENTRO, Inc.*, No. 5:09-CV-567, 2011 WL 743746, at *4
(N.D.N.Y. Feb. 23, 2011).  A private entity may act under color of state law if it acted in concert with a
state actor. *Id.*  Plaintiff in *Thrall* made no claim that the Union or another individual defendant
"conspired with Centro to violate his constitutional rights." *Id.*  Thus, without specifically stating the
fact, Judge McCurn found that CENTRO was a state actor.

*City of New York*. No. 09 Civ. 3286, 2011 WL 4344203, at *13 (S.D.N.Y.  Sept. 14, 2011) (citing *Bohmer v. New York*, 2011 WL 2651872, at *3 (S.D.N.Y. June 16, 2011)). "'[B]oilerplate assertions that a municipality has a custom or policy resulting in a constitutional deprivation of plaintiff's rights are insufficient.'" *Id.* (quoting *Bohmer, supra*).  The policy must be the "moving force" behind the constitutional violation. *Bd. of the County Comm'rs v. Brown*, 520 U.S. 397, 404 (1997) (internal quotations omitted).

A municipality may not be found liable simply because one of its employees committed a tort. *Brown*, 520 U.S. at 403.  Plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a causal connection between the municipal action and the deprivation of federal rights. *Id.* Where the plaintiff claims that the municipality has not directly inflicted an injury, but has "caused" an employee to do so, "rigorous standards of culpability and causation must be applied" so that the municipality is not held liable solely for the actions of an employee. *Brown*, 520 U.S. at 405.

In this case, although plaintiff claims that CENTRO has a "policy," plaintiff's statements are vague and unsupported by any factual statements.  In fact, it appears that plaintiff is claiming that the defendants targeted her personally, not as the result of a policy or custom of CENTRO.[12]  Plaintiff's allegations against CENTRO are too vague to state a cause of action for municipal liability under section 1983.  Thus, plaintiff may

---

[12] Plaintiff vaguely states that she was made to take unwarranted "tests," she also refers to the New York State Vehicle and Traffic Law which mandates that bus drivers pass written and road tests due to safety requirements as discussed above.  It is unclear whether plaintiff's allegedly unwarranted "tests" refer to the New York State Law, but her allegations are too vague to state a claim against CENTRO and certainly too vague to be interpreted as a challenge to the New York State statute.

not bring her complaint against CENTRO under section 1983.

The next paragraphs of plaintiff's section 1983 complaint state that Steve Koegel refused to consider plaintiff for an open position in the marketing department, and when she attempted to obtain a "flow chart," for "organizational redress" of his offensive and oppressive conduct, this started an "eight-year persecution." (1983 Compl. § 5 - First Cause of Action - CM/ECF p.12).  Then plaintiff states that Steve Koegel attempted to involve plaintiff in a marketing campaign without determining whether he needed her permission to do so. (*Id.* - Second Cause of Action).  Plaintiff claims that she spoke "openly and forcefully" about this, which created an "upper management push" to "persecute" her. (*Id.*)  Finally, plaintiff claims that she asked to speak with "a chief officer" to let "the top managers" know what was happening.  Plaintiff states that she spoke to Christine LoCurto, but Ms. LoCurto never "looked into" plaintiff's issues. (*Id.* - Third Cause of Action).

Assuming for purposes of this recommendation that CENTRO and its employees act under color of state law, plaintiff has failed to state a claim under section 1983.  Plaintiff does not include the dates that any of Mr. Koegel's actions occurred, but she does state that his actions caused an "eight-year" "persecution."[13]  The court first notes that the statute of limitations for section 1983 actions in New York State is three years

---

[13] Unlike Title VII or the ADEA, plaintiff may name individuals in a section 1983 action, assuming that she stated a claim against them.  Section 1983 provides liability for every "person" who violates the plaintiff's constitutional or statutory rights while acting under color of state law. 42 U.S. C. § 1983.  However, plaintiff does not need to sue the CENTRO "Operations Department" or the "Dispatch Desk."  She has already named CENTRO as a defendant, and naming CENTRO's "Departments" is redundant and unnecessary. *See e.g. Cunney v. Bd. of Trustees of Village of Grandview*, 56 F. Supp. 3d 470, 488 (S.D.N.Y. Sept. 29, 2014) (holding that departments that are merely administrative arms of the municipality do not have a separate legal entity from the municipality and therefore cannot sue or be sued) (citations omitted).  Thus, the court will recommend dismissing the CENTRO "Departments" with prejudice.

from the accrual of a cause of action. *Owens v. Okure*, 488 U.S. 235, 250-51 (1989). See N.Y. Civ. Prac. L & R. § 214(5). If Mr. Koegel violated plaintiff's rights eight years ago it is possible that the statute of limitations may have run.[14] Plaintiff also does not explain how she was "persecuted" for eight years or how that "persecution" is related to any of the other claims that she seems to be attempting to make.

Mr. Koegel's failure to consider plaintiff for an open position, in itself, does not state any constitutional claim. It is unclear what plaintiff means when she says that she attempted to obtain a "flow chart" for his "offensive and oppressive" actions toward her, which cause the eight-year persecution. Plaintiff has only stated that Mr. Koegel refused to consider her for a job. She does not state what those "offensive" or "oppressive" actions were, when they occurred, or how those actions violated plaintiff's constitutional rights. In addition, it is unclear whether Mr. Koegel was even involved in the "eight-year" "persecution" because plaintiff does not explain what that persecution was.

Plaintiff does state that Ms. LoCurto did not properly investigate plaintiff's claims. However, plaintiff has no constitutional right to an investigation of any sort by government officials. *See Bernstein v. New York*, 591 F. Supp. 2d 448, 460 (S.D.N.Y. 2008); *Lewis v. Gallivan*, 315 F. Supp. 2d 313, 317 (W.D.N.Y. 2004) (citing cases). In order for a constitutional violation to have occurred, the investigation itself must have

---

[14] Although equitable tolling is available in certain cases, it is applied in "rare and exceptional cases" where "extraordinary circumstances" prevented the plaintiff from filing her claims within the statute of limitations. *See Abbas v. Dixon*, 480 F.3d 560, 564 (2d Cir. 2007). Plaintiff bears the burden of establishing the applicability of equitable tolling. *Boos v. Runyon*, 201 F.3d 178, 185 (2d Cir. 2000). The court is not making any specific finding in this case regarding the statute of limitations because plaintiff has failed to state a section 1983 cause of action regardless of the date that the conduct allegedly occurred.

resulted in the deprivation of a constitutional right. *Faison v. Hash*, 03-CV-6475P, 2004 WL 944523, at *6 (W.D.N.Y. April 23, 2004) (citation omitted).  Thus, even if Ms. LoCurto failed to properly investigate plaintiff's complaints or concerns, plaintiff may not bring a section 1983 action against her on that basis.

To the extent that the court looks to facts that plaintiff has stated in her Title VII and ADEA complaints as possible bases for her section 1983 claims, *e.g.* under the Equal Protection Clause, the plaintiff still fails to state a claim for relief as they are written.  Plaintiff has failed to allege that she was treated differently because she is a woman, and the court has no idea if she belongs to any other protected category.  The same is true with respect to age.  Plaintiff alleges that she is in the protected category, but has set forth no factual support for a claim that she was treated differently because of her age.

### D.     Bivens

#### 1.     Legal Standards

*Bivens* established a cause of action for monetary damages resulting from the violation of a constitutional right by federal agents or employees, acting under color of *federal* law. *Arar v. Ashcroft*, 585 F.3d 559, 571-72 (2d Cir. 2009) (discussing history of *Bivens* actions).

#### 2.     Application

In this case, plaintiff claims that there is a "lack of oversight" for grievances at CENTRO, and that some individuals "block access" for employees to bring their concerns to "the executive body."  First, there is no indication that any of the defendants act under color of federal law or are federal employees.  This alone would justify dismissal of plaintiff's attempt at bringing a *Bivens* action.  In addition, the lack

of oversight for grievances, even if true, is not a constitutional violations as stated above.  Individuals have no constitutional right to any sort of an investigation or grievance procedure. *Bernstein v. New York*, 591 F. Supp. 2d at 460.  Thus, to the extent that plaintiff is attempting to bring a *Bivens* action or to the extent that plaintiff claims that CENTRO's grievance procedure is flawed, those claims may be dismissed with prejudice as against all defendants.

## IV.    Opportunity to Amend

### A.    Legal Standards

Generally, when the court dismisses a pro se complaint *sua sponte*, the court should afford the plaintiff the opportunity to amend at least once; however, leave to re-plead may be denied where any amendment would be futile. *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993).

### B.    Application

Although the court is recommending dismissal of plaintiff's complaint, I will allow plaintiff the opportunity to submit a proposed amended complaint in an attempt to clarify and supplement her employment discrimination claims under Title VII, the ADEA, and/or section 1983.  If the court approves this recommendation and allows plaintiff to submit a proposed amended complaint, plaintiff should be warned that any amended complaint must be a ***complete pleading***.  Plaintiff must restate her claims in the new pleading and may ***not*** refer to her original complaints.

In addition, if the District Judge approves this recommendation and plaintiff chooses to amend her complaint, plaintiff should submit a copy of her Right-to-Sue letter which she claims was issued on March 21, 2018 for purposes of Title VII and the ADEA claims.  Plaintiff may also name only CENTRO as a defendant in her Title VII

or ADEA complaint. Plaintiff must include the dates that she alleges the improper conduct occurred. If plaintiff amends her section 1983 claims, she may include individual defendants, but only to the extent that they were personally involved in the alleged discrimination. Finally, to the extent that plaintiff is attempting to allege discrimination as the result of gender, race, or national origin, she must describe how the defendant's conduct relates to her claims of discrimination based on these protected categories.[15]

  **WHEREFORE**, based on the findings above, it is

  **ORDERED**, that plaintiff's application to proceed IFP (Dkt. No. 2) is **GRANTED** for purposes of filing, and it is

  **RECOMMENDED**, that the plaintiff's *Bivens* complaint be **DISMISSED WITH PREJUDICE**, and it is

  **RECOMMENDED**, that all claims except potential Equal Protection claims under section 1983, be dismissed **WITH PREJUDICE** as against defendants O'Brien, Harris, "Bob" at the Dispatch Desk, Acevedo, Montroy, Koegel, LoCurto, and it is

  **RECOMMENDED**, that the entire complaint be **DISMISSED WITH PREJUDICE** as to the CENTRO Human Resources and Accounting Departments, and it is

  **RECOMMENDED**, that plaintiff's Title VII, ADEA, and Section 1983 complaints be **DISMISSED WITHOUT PREJUDICE** to plaintiff filing an amended complaint as to defendant CENTRO only for Title VII and the ADEA, and with respect to any individual defendants who were allegedly personally responsible for the

---

[15] Although the court knows the plaintiff's gender, if she is basing any claims on race or national origin, she must identify her race and/or national origin in order to state a claim.

discrimination under section 1983, and it is

RECOMMENDED, that if the court adopts this recommendation, plaintiff be afforded **Forty-five (45) days from the date of the District Court's Order** approving this recommendation within which to submit a proposed amended complaint to the court or request an extension of time to do so, and it is

RECOMMENDED, that if the plaintiff files an amended complaint, the amended complaint be returned to me for further review, and it is

RECOMMENDED, that if the court adopts this recommendation, and plaintiff fails to submit an amended pleading or ask for an extension of time to do so within the 45 days allotted, the court dismiss the entire action with prejudice.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: July 12, 2018

Hon. Andrew T. Baxter
U.S. Magistrate Judge