UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

MARY ELIZABETH B. GLASGOW,

                                  Plaintiff,

      -v.-                                                   5:18-CV-721 (GTS/ATB)

CNYRTA/Centro, Inc., et al.,

                                  Defendants.

MARY ELIZABETH B. GLASGOW, Plaintiff pro se

ANDREW T. BAXTER, United States Magistrate Judge

## REPORT-RECOMMENDATION

The Clerk has sent to the court for review an amended complaint, filed by plaintiff in response to this court's July 12, 2018 Order and Report-Recommendation ("ORR") and the District Court's approval of that recommendation on September 12, 2018. (Dkt. Nos. 4, 6). In my July 12, 2018 ORR, I granted plaintiff's application to proceed in forma pauperis based on her financial eligibility. (Dkt. No. 4 at 1).

However, I also stated that in addition to determining whether plaintiff meets the financial criteria to proceed IFP, the court must also consider the sufficiency of the allegations set forth in the complaint in light of 28 U.S.C. § 1915, which provides that the court shall dismiss the case at any time if the court determines that the action is (i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915 (e)(2)(B)(i)-(iii).

In determining whether an action is frivolous, the court must consider whether the complaint lacks an arguable basis in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Dismissal of frivolous actions is appropriate to prevent abuses of

court process as well as to discourage the waste of judicial resources. *Neitzke*, 490 U.S. at 327; *Harkins v. Eldridge*, 505 F.2d 802, 804 (8th Cir. 1974).  Although the court has a duty to show liberality toward *pro se* litigants, and must use extreme caution in ordering *sua sponte* dismissal of a *pro se* complaint before the adverse party has been served and has had an opportunity to respond, the court still has a responsibility to determine that a claim is not frivolous before permitting a plaintiff to proceed. *Fitzgerald v. First East Seventh St. Tenants Corp.*, 221 F.3d 362, 363 (2d Cir. 2000) (finding that a district court may dismiss a frivolous complaint *sua sponte* even when plaintiff has paid the filing fee).

To survive dismissal for failure to state a claim, the complaint must contain sufficient factual matter, accepted as true, to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Bell Atl. Corp.*, 550 U.S. at 555).  The court will now turn to a consideration of the plaintiffs' complaint under the above standards, keeping in mind that pro se pleadings are interpreted to raise the strongest arguments they suggest. *See Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007).

Plaintiff has now filed a proposed amended complaint which I will review based on the above standards.

## II.   Facts

In her original complaint, plaintiff filed four separate form-complaints, essentially claiming that the Central New York Regional Transportation Authority/CENTRO, Inc. ("CENTRO") improperly terminated plaintiff and caused her

substantial damages. (Complaints ("Compl.") (Dkt. No. 1).  These original complaints contained claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 626 (c)(1), 42 U.S.C. § 1983, and *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics* ("Bivens"), 403 U.S. 388 (1971).  In my July 12, 2018 ORR, I reviewed each of the documents that plaintiff filed in an attempt to determine whether plaintiff stated any claims for relief under any of the statutes reflected in the form-complaints. (Dkt. No. 4)

In my initial review, I found that plaintiff failed to state claims under each of the statutes, and also failed to state a claim under *Bivens*.  I recommended dismissing, without prejudice, many of plaintiff's claims, and recommended giving her the opportunity to amend with respect to the Title VII, ADEA, and 1983 claims.  I also recommended dismissing the complaint with prejudice to the extent that plaintiff made any claims under *Bivens*. (Dkt. No. 4).  I also noted that plaintiff neglected to file her Right-to-Sue Letter.

Plaintiff's amended complaint has cured some of the problems with the original, but has created other issues.  She has properly omitted any claims based on *Bivens* and has filed her Right-to-Sue Letter, dated March 21, 2018 in support of her Title VII and ADEA claims. (Proposed Amended Complaint ("PAC") Dkt. No. 7 at CM/ECF p.31).[1] Plaintiff has still filed separate form-complaints: one asserting age discrimination (Dkt. No. 7 at CM/ECF pp. 1-4); one for section 1983 claims (Dkt. No. 7 at CM/ECF pp.5-8);

---

[1] Because plaintiff has again submitted complaints that are all separately paginated, together with many separately paginated handwritten pages, the court will cite to the pages as assigned by the court's electronic filing system, CM/ECF.

3

and the third one for Title VII violations (Dkt. No. 7 at CM/ECF pp.9-13). Plaintiff has also attempted to clarify her allegations by adding a substantial number of hand-written pages. (Dkt. No. 7 at CM/ECF pp.14-30). Plaintiff has also eliminated any individual defendants.

## III. Age Discrimination

### A. Legal Standards

Under the ADEA, the plaintiff must show that she belonged to a protected class, she was qualified for the position that she held or that she sought, she suffered an adverse employment action, and the adverse employment action occurred under circumstances giving rise to the inference of discriminatory intent. *Cargian v. Breitling USA, Inc.*, No. 15 Civ. 1084, 2016 WL 5867445, at *3 (S.D.N.Y. Sept. 29, 2016) (quoting *Brown v. City of Syracuse*, 673 F.3d 141, 150 (2d Cir. 2012), *appeal filed*, (2d Cir. Oct. 24, 2016). Plaintiff has the burden to show that age was the "but for" cause of the challenged employer decision. *Testa v. CareFusion*, No. 14-CV-5202, 2018 WL 1611378, at *5 (E.D.N.Y. Apr. 3, 2018) (citing inter alia *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 178 (2009) (holding that under the ADEA a plaintiff cannot establish disparate treatment by proving that age was simply a motivating factor in the adverse decision)).

### B. Application

Plaintiff has failed to correct the deficiencies in her original complaint with respect to any claims for age discrimination. She states in her form-complaint that she is 50+, so she is in the protected class.[2] However, neither her form-amended complaint,

---

[2] The ADEA protects individuals over the age of 40. *See Roge v. NYP Holdings, Inc.*, 257 F.3d 164, 168 (2d Cir. 2001) ("Under the ADEA, individuals ages forty and over are members of the

4

nor her additional handwritten pages contain any factual allegations which would associate her termination or her allegedly poor treatment with her age. In the form-complaint she states that there were incorrect sizes/material choices for her uniforms and that she was "restricted to buy uniforms which are sabotaged by Natasha Randall." "'Skirts'" were "discontinued in choices for Centro." (PAC at CM/ECF p.3). In the same paragraph, plaintiff mentions that her wage records were "included in the scenario," that no formal complaints got past the "Operations Dept.," and [n]o management assistance abuses allowed." (*Id.*)

In her handwritten pages, plaintiff mentions uniforms, and there is a cryptic reference on one page in which plaintiff states that someone named Waverly Farson, who was the retired head of security for CENTRO, was in a "personal dispute over [plaintiff's] driving aptitude." (PAC at CM/ECF p.16). Plaintiff then adds a sentence fragment that does not mean anything: "Due to age, cultural appearance ("the skirt"), minimal articulations." (*Id.*) Plaintiff also states that "[t]hus challenged he rode my route that shift as if a passenger." (*Id.*) Plaintiff ultimately states that this individual "highly approved of [her] judgement and actions. [sic] as well as verbalizing instructions to [a] passenger." (*Id.*) Other than the passing, vague reference to age, in a sentence fragment,[3] there is no allegation that any of the defendant's actions were taken because of plaintiff's age or that she was treated differently than an individual who was

---

protected class.") (citing 29 U.S.C. § 631(a)).

[3] The court can only speculate that the previous sentence may be related to the sentence fragment, and that it should read as follows: "Waverly Farson . . . , who was the retired head of security for CENTRO was in a personal dispute over [plaintiff's] driving aptitude," *due to age, cultural experience ("the skirt"), and minimal articulations.* However, even if the court rewrites plaintiff's sentence so that it is a complete sentence, the resulting language is still too vague to state a claim, particularly when plaintiff states that this individual "highly approved" of her conduct.

not in the protected class.

Once again, plaintiff's allegations are vague, and although she has also checked the box on the complaint form, indicating that she was subjected to "retaliation," plaintiff does not state how any defendant retaliated against her for opposing a practice made unlawful by the statute. *See* 29 U.S.C. § 623(d) (prohibiting retaliation by an employer or a labor union). Thus, plaintiff has failed to cure the defects in her original complaints to state a claim under the ADEA or to properly allege any retaliation claim in the context of age discrimination.[4]

## IV. Section 1983

### A. Legal Standards

### 1. Legal Standards

Section 1983 provides, in relevant part, that

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . .

42 U.S.C. § 1983. Section 1983 itself does not create substantive rights, rather, it provides a "'method for vindicating federal rights elsewhere conferred.'" *Fiedler v. Incandela*, 222 F. Supp. 3d 141, 156 (E.D.N.Y. 2016) (quoting *Patterson v. County of Oneida*, 375 F.3d 206, 225 (2d Cir. 2004) (citing *Baker v. McCollan*, 443 U.S. 137, 144 n. 3 (1979)). In order to state a claim under section 1983, the plaintiff must allege the deprivation of rights, privileges, or immunities secured by the Constitution or other

---

[4] Plaintiff also checked the box for "other acts." (PAC at CM/ECF p.2). According to plaintiff, these "other acts" included "bullying, uniforms, signups . . . ." (*Id.*) (ellipsis in original).

federal laws, committed by a person acting under color of state law. *Id.* (quoting *Hawkins v. Nassau Cty. Corr. Facility*, 781 F. Supp. 2d 107, 111 (E.D.N.Y. 2011).

In my July 12, 2018 ORR, I discussed plaintiff's attempt to make an equal protection argument. To the extent that plaintiff seeks to bring an Equal Protection claim based on the allegations in her original complaints, I noted that, section 1983 could be available as a basis for such a claim. (Dkt. No. 4 at 14-15). *See Garrido v. N.Y.C. Dep't of Educ.*, No. 16 Civ. 9464, 2018 WL 1664793, at *5 (S.D.N.Y. Mar. 15, 2018) (discussing sections 1981 and 1983 in the employment discrimination context for public employees). However, I also stated that a public employee may not bring a "class-of-one"[5] Equal Protection claim for employment discrimination "with no assertion that the different treatment was based upon the employee's membership in a protected class." *Engquist v. Oregon Dep't of Agriculture*, 553 U.S. 591, 595 (2008). The court also stated that section 1983 *was* available for individual defendants who were personally involved in the alleged constitutional deprivation. (Dkt. No. 7 at 15).

**B. Application**

Plaintiff has omitted any individual defendants in this PAC. In addition, although she alleges that she has been denied "Equal Protection" and "equal rights," and has been the subject of bullying and retaliation, she still has failed to assert that she was treated differently because of her protected classification. Plaintiff continues to state that CENTRO uses a "benign neglect strategy." (PAC at CM/ECF p.6). But it is unclear what plaintiff means by this statement or how this alleged "strategy" violated

---

[5] In a traditional "class-of-one" claim, a plaintiff may allege that she has been intentionally treated differently from others who are "similarly situated," and there is no "rational basis" for the difference in treatment. *See Analytical Diagnostic Labs, Inc. v. Kusel*, 626 F.3d 135, 140 (2d Cir. 2010) (citations omitted).

her rights. Plaintiff states that Jobs Plus[6] counselor Robin D'Eredita brought plaintiff's "plight beginning at Training Class to the Board." (*Id.*)  Plaintiff states that she had current physicals, drug tests, and Federal Driver 19-A evaluations. (*Id.*)  Plaintiff alleges that there were layers and cycles of "pervasive prerequisites" that "caused burden" and "caused termination." (PAC at CM/ECF at 7).  None of these alleged prerequisites appear to be related to any protected class.

Plaintiff claims that she was denied proper positive supervision, that the door to the administration was "locked," and that she suffered "severe, uncommon bullying and retaliations." (*Id.*)  She also states that CENTRO let her down, denied her "the right to redress," . . . have official responses," and "[d]id not investigate." (PAC at CM/ECF at p.8).  Plaintiff does not claim that other individuals were given proper investigations while she was not.[7]  There is no basis for an equal protection claim in plaintiff's statement of the facts.

Plaintiff's handwritten facts, following the form complaints do not add any substance to plaintiff's section 1983 claims for Equal Protection violations.  Instead, plaintiff seems to allege that the grievance procedures were complicated and not followed properly. (PAC at CM/ECF 20).  Plaintiff states that she "needed [a] flowchart to proceed with grievances," and that she was "[b]locked from knowing who to talk to .

---

[6] "Jobs Plus" is a contractor of Onondaga County Department of Social Services. https://www.jobsplus.cc/about_us.htm.  The mission of Jobs Plus is to help individuals who apply for public assistance to find and keep employment.  Jobs Plus provides a job readiness program, interview services, transportation service, childcare services, and clothing services to individuals in the program. *Id.*

[7] In any event, plaintiff has no constitutional right to any particular investigation. *See Bernstein v. New York*, 591 F. Supp. 2d 448, 460 (S.D.N.Y. 2008); *Lewis v. Gallivan*, 315 F. Supp. 2d 313, 317 (W.D.N.Y. 2004) (citing cases).

. . [w]here to go with grievance." (*Id.*) These allegations sound more like a due process claim than an equal protection claim. In order to state a due process violation, plaintiff would have to allege that she had a constitutionally protected life, liberty, or property interest, and that state action has deprived her of that interest without due process. *Jordan v. County of Chemung*, 264 F. Supp. 3d 497, 515 (W.D.N.Y. 2017). Once a protected interest is found, the court determines what process is due prior to the deprivation of that interest. *Id.* (citations omitted).

      Plaintiff does not specifically allege a due process violation, and it is unclear what plaintiff's employment status was at CENTRO, other than the reference to Jobs Plus. However, reading the factual recitation in the PAC, it is clear that plaintiff was afforded the opportunity to complain about her situation and was afforded a "hearing" regarding the charges that were ultimately brought against her. Plaintiff claims that she was called into "Mike" and "Kevin's" offices, and she reported her concerns to KC Martin, Chris Morrente, and Jackie Musengo. (PAC at CM/ECF 25). Plaintiff states that she asked these individuals to attend "the meetings" with her, but no help was given.[8] Plaintiff states that no one answered her grievances or "incidents reported," and she did not receive the result that she wanted.[9] (PAC at CM/ECF 24). She alleged that "[f]alse steps were taken." (*Id.*) However, plaintiff does not indicate what steps were false or how they were false. Plaintiff also states that "when forced by unemployment hearing,

---

[8] Plaintiff then states that "The Spirit" told her to "go around front and expose the "'set up,'" and then "the Spirit" told her to "go back and wait." (PAC at CM/ECF 25). Plaintiff then states that "Mike" asked her what "tripper" she was taking. (*Id.*)

[9] Plaintiff states that she had two accusations against her regarding customer service, but the proof was unwarranted. (PAC at CM/ECF 24). Plaintiff claims that "Mike R" started putting incident reports in her box, and that she answered "some," but refused to "rest without higher level supervisor or official present." (*Id.*)

CENTRO chose absenteeism as final cause of action a few weeks after Mike R said its fine." (PAC at CM/ECF 29).

Plaintiff states that she was told that she was "crazy," and that "they" were going to "fire" her. (PAC at CM/ECF 28). Plaintiff then states that a "mandatory evaluation" was ordered, but that CENTRO took steps to influence the outcome. (*Id.*) Plaintiff states that Chuck Ascevado tried to get EAP counselors to allow him to come into the "referral portion of the meeting,' but she refused to meet "him," and she left without speaking to "him." (*Id.*) Kevin Perin brought plaintiff into his office to show her his "gripes." Plaintiff states that he let plaintiff read "the letter"[10] and then shredded it. (*Id.*)

Plaintiff also seems to state that CENTRO had a video tape of plaintiff speaking with a bus passenger, which was shown to the plaintiff and discussed. (PAC at CM/ECF 29). However, plaintiff states that "Kevin" did not follow CENTRO rules, which apparently required him to "look at (10) ten minutes before or after the incident."[11] (*Id.*) Plaintiff states that "at the same time," she was current with her federal driver 19-A periodic evaluations. (PAC at CM/ECF 29). Plaintiff makes vague references to someone named Bill speaking with her "witnesses in vehicle disputes," who "later couldn't remember." (PAC at CM/ECF 19).

Plaintiff's vague allegations do not state either an Equal Protection or a Due Process claim under section 1983. *See Barr v. Abrams*, 810 F.2d 358, 363 (2d Cir.

---

[10] Plaintiff does not state the contents of the letter, nor does she explain the purpose of the letter.

[11] Plaintiff may be trying to say that the portion of the tape that Mr. Perin reviewed was taken out of context, and that Mr. Perin should have viewed more of the incident. Plaintiff claims that, according to CENTRO "rules," video tapes must be viewed for ten minutes before, and ten minutes after an incident. (PAC at CM/ECF 29).

1987) (conslusory allegations are insufficient to state a constitutional claim). Although plaintiff has written extra pages in an attempt to support her proposed amended complaint, these attached pages essentially describe problems that she had with her treatment by CENTRO, which she alleges was unfair, but she does not allege what process was due to her that the company failed to provide for purposes of due process, and she does not state how she was treated differently than other individuals who were similarly situated for purposes of equal protection. Thus, plaintiff has failed to cure the defects in her original complaint to plausibly state section 1983 claims.

V.   **Title VII**

    A.   **Legal Standards**

Under Title VII, it is unlawful for an employer to discriminate against any individual with respect to her compensation, terms conditions, or privileges of employment, because of the individual's race, color, religion, sex or national origin. 42 U.S.C. § 2000e-2(a)(1). In order to state a claim under Title VII, plaintiff must show that she was a member of a protected class, she was qualified for the position, she suffered an adverse employment action, and the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent. *Roge v. NYP Holdings, Inc.*, 257 F.3d 164, 168 (2d Cir. 2001).

    B.   **Applications**

In plaintiff's original form Title VII complaint, she checked every box, indicating that she had been discriminated against based upon her race, religion, sex, and national origin. ((Title VII Compl. ¶ 6(A)-(D) & 6(F) - CM/ECF p.2) (Dkt. No. 1). In the Title VII part of the PAC, plaintiff has failed to check any of the boxes which describe the basis for the defendant's alleged conduct. (Form Title VII Compl., PAC at CM/ECF

10).

Even assuming that the court could refer to plaintiff's original form complaint, she has still failed to plausibly associate any adverse employment action with her membership in a protected class. Plaintiff alleges that she was bullied and suffered "retaliation," and that she had false accusations made against her, but there is absolutely no statement that the defendant's conduct was in any way related to her race, religion, sex, or national origin or that any alleged "retaliation" was in response to protected conduct. Plaintiff states that the "Vicky" incident[12] was used to "pressure" plaintiff, and that "the claim" was withdrawn, without "rescinding" the charges against plaintiff. (PAC at CM/ECF 11). In her "First Cause of Action," she states that the "Company lacked feasants [sic] in supervising the normalizing and ordinary hire [sic] experience of me," and that the "Company allowed bullying and retaliation." (*Id.*)

Plaintiff's newly added hand-written pages do not support any allegations of Title VII discrimination. Plaintiff states that people "yell[ed]" at her often, embarrassed her, and somehow prevented her from applying or interviewing for a marketing job.[13] (PAC at CM/ECF 14). Plaintiff was also told that she better not attempt to get Fridays and Saturdays off regularly or "wear scarves on [her] head."[14] (PAC at CM/ECF 15).

---

[12] Plaintiff does not elaborate on what the "Vicky" incident was.

[13] The rest of plaintiff's PAC implies that plaintiff may have been training to be a bus driver and was not involved with marketing.

[14] Although this could be interpreted as a reference to religious expression, plaintiff has not indicated that she is a member of any specific religion and does not state anywhere in the complaint that this statement was in the nature of religious discrimination. Such a conclusory statement is insufficient to state a Title VII claim, when there is absolutely no factual support for, or other claim of, religious discrimination. *See Lucas v. Apple Food Service of New York, LLC*, No. 15-CV-4007, 2015 WL 6507429, at *3 (E.D.N.Y. Oct. 27, 2015) (conclusory allegations that defendant suspended plaintiff or terminated her employment based on a protected characteristic were insufficient to state a

Plaintiff also stated that "KC" checked plaintiff's hair to make sure that she was not wearing "a scarf or earmuffs."[15] (PAC at CM/ECF 22).  Plaintiff also states that "recruits" were given a name to "call" her and were warned not to mingle with her. (PAC at CM/ECF 19).  Plaintiff also states that a "recruit" "admitted" to plaintiff that "they were asked: are you for black or white . . . ." (*Id.*)  This isolated, random, and vague hearsay comment, together with plaintiff's other conclusory allegations do not support a claim under Title VII.[16] *See Krzesaj v. New York City Dep't of Educ.*, No. 16 Civ. 2926, 2017 WL 1031278, at *15 (S.D.N.Y. Mar. 15, 2017) (citing *Gertskis v. EEOC*, No. 11-CV-5830, 2013 WL 1148924, at *8 (S.D.N.Y. Mar. 20, 2013) (collecting cases finding that Title VII claims failed because they were conclusory and without factual content creating a plausible inference of any discriminatory conduct), *aff'd sub nom. Gertskis v. EEOC*, 594 F. App'x 719 (2d Cir. 2014).

It appears from plaintiff's PAC that the defendant was concerned about plaintiff's ability to be a bus driver.  Plaintiff states that she consistently passed the "federal 19A Driver Checks,"[17] and that defendant added insult to injury with

---

plausible claim of employment discrimination) (citing *Wilson v. New York City Dep't of Corr.*, No. 11 Civ. 9157, 2013 WL 922824, at * 4 (S.D.N.Y. Mar. 8, 2013)).

[15] This comment makes it unclear whether plaintiff is referring to a religious custom, particularly the mention of ear muffs.

[16] Plaintiff has not included her race or religion in the facts of this case, making it extremely difficult to determine whether any of the defendant's actions are related to either one of those protected categories.

[17] Article 19-A of the State of New York's Vehicle and Traffic Law governs the "Special Requirements for Bus Drivers."  Bus drivers are not allowed to operate a bus for a motor carrier unless they are qualified according to Article 19-A and Part 6 of the Commissioner's Rules and Regulations. https://dmv.ny.gov/motor-carriers/information-and-forms-article-19; N.Y. Veh. & Traf. Law § 509 et seq.; 15 N.Y. Comp. Codes Rules & Regs. § 6.10.  Providers of public transportation such as CENTRO have a legal obligation to certify their bus operators as medically qualified to drive a bus.

"accusations of mental health." (PAC at CM/ECF 21, 29). However, "mental health" is not a protected category under Title VII. Plaintiff is not alleging disability discrimination because she is not asserting that she has a disability.[18] Treating an employee badly should not be condoned, and would be inappropriate. However, in order to be actionable, the defendant's conduct must be related to her membership in the protected class. The fact that plaintiff belongs to one or several protected classes is only part of the analysis, and the plaintiff's membership in the protected class does not, in itself, make every adverse action against her a statutory or constitutional violation, without a connection between the adverse action and the protected status. Thus, plaintiff has failed to correct the deficiencies in her original complaints, and her Title VII claims fail.

## VII. Opportunity to Amend

### A. Legal Standards

Generally, when the court dismisses a pro se complaint *sua sponte*, the court should afford the plaintiff the opportunity to amend at least once; however, leave to re-plead may be denied where any amendment would be futile. *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993).

### B. Application

This court has already afforded plaintiff the opportunity to amend, and she has been unable to even plausibly associate the defendant's alleged actions to any

---

N.Y. Veh. & Traffic Law § 509. Periodic examinations of bus operators are required by the statute and regulations. See N.Y. Veh. & Traf. Law. § 509(g)(l). The regulations set forth certain physical and mental requirements. *See generally* 15 NYCRR § 6.1.

[18] In fact, plaintiff vehemently denies having a mental impairment.

statutorily or constitutionally prohibited conduct. Thus, the court will recommend dismissing plaintiff's complaint without the further opportunity to amend.

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that plaintiff's PAC (Dkt. No. 7) be **DISMISSED** for failure to state a claim under 28 U.S.C. § 1915(e)(2)(B)(ii).

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: October 19, 2018

*[Signature]*
Hon. Andrew T. Baxter
U.S. Magistrate Judge